UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-20628-CR-GRAHAM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CARLOS RODRIGUEZ,          **REPORT AND RECOMMENDATION**

    Defendant.
_____/

On or about May 17, 2010, court-appointed defense counsel Scott W. Sakin ("Counsel") submitted a voucher application numbered FLS 09 3433 with appended time sheets requesting $87,872.10 as final payment for attorney's fees and costs pursuant to the Criminal Justice Act (the "CJA"). Counsel also supplied detailed time sheets and a letter of explanation dated May 17, 2010 (the "Letter of Explanation") in support of his voucher application. Counsel represented Defendant Carlos Rodriguez ("Defendant") for approximately eight (8) months from his appointment on July 28, 2009 until April 7, 2010.

Counsel seeks $87,872.10 in his application, an amount which exceeds the $9,7000.00 statutory maximum allowed for representation in non-capital felony cases under the CJA. As a result, United States District Court Judge Donald L. Graham entered an Order of Reference **[DE # 806]** referring the voucher application to the undersigned for a Report and Recommendation as to whether the fees requested by Counsel are appropriate. See 28 U.S.C. § 636(a); see also United States District Court for the Southern District of Florida Magistrate Judge Rules.

## Criminal Justice Act and Guidelines for Administration of the Criminal Justice Act

The United States Judicial Conference developed the Guidelines for Administration of the Criminal Justice Act (the "Guidelines") to assist courts in the application of the provisions of the CJA.  See *In re Burger,* 498 U.S. 233, 234, 111 S.Ct. 628 (1991).  In the Guidelines, judges are "urged to compensate counsel at a rate and in an amount sufficient to cover appointed counsel's general office overhead and to ensure adequate compensation for representation provided." *See* Section §6.02(B) of the Guidelines.

The CJA at 18 U.S.C. §3006A(d)(1) provides that at the conclusion of CJA representation, an appointed attorney shall be compensated for time expended in court and for time "reasonably expended out of court" and shall be reimbursed "for expenses reasonably incurred."  The district court, as the body empowered to "fix" CJA appointed counsel compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. 18 U.S.C. §3006A(d)(5); *U.S. v. Griggs,* 240 F.3d 974 (11th Cir. 2001).  In order for the recommended fee amount to exceed the statutory maximum, however, the district court *must* first certify that the case involves "complex" or "extended" representation.  18 U.S.C. §3006A(d)(3). Second, the district court must conclude that the amount is necessary to provide Counsel with fair compensation.

A case may be considered "complex" if the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case.  *See* Section §2.22B(3) of the Guidelines. A case may be considered "extended" if more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings. *Id.*

## DISCUSSION

### This Case Was Complex

Under the Guidelines, if the amount of compensation sought exceeds the statutory maximum, I must first find that the representation was either complex or extended. This case was complex for several reasons.

First, the very nature and number of charges involved in this case required Counsel to expend more time, skill and effort than normally required in the average case. This case commenced when the grand jury issued an Indictment **[DE # 3]** naming Defendant and eighteen (18) co-defendants.

The Indictment contained twenty (20) counts. The government alleged that Defendant and the codefendants were involved in a mortgage fraud conspiracy scheme to recruit straw buyers to purchase residential properties. The purpose of the scheme was to obtain money from various banks and lending institutions to finance the purchase of the properties through materially false representations and fraudulent pretenses concerning the true purchasers of the homes.

The scheme required the straw buyers to pose as home buyers when, in fact, the straw buyers were not to be either the true owners of the homes or responsible for making the monthly mortgage payments. Rather, other unnamed third persons were to be the true owners of the properties. In the scheme, the straw buyers would purchase the homes at highly inflated prices by obtaining mortgages on the properties. The true owners of the properties would fail to make payments on the mortgages and default on the loans. The various banks and lending institutions would be forced to foreclose on the properties,

suffering large losses.

To further complicate matters, many of the defendants involved in this scheme were related. Defendant was "the brother of the lead defendant, was the boyfriend of the second defendant." (Letter of Explanation at 1). The fact that many of the defendants were related or closely associated made Counsel's representation in this case even more complicated.

The government charged Defendant with conspiracy to commit mail and wire fraud and wire fraud. Defendant faced a maximum sentence of twenty (20) years imprisonment for Count I and twenty (20) years imprisonment for each of Counts VIII, XVI, XVII, XVIII, XIX and XX.

Second, this case was extremely document intensive. "The case involved well over 50,000 documents, many of which were banking documents, mortgage documents, mortgage company documents, and all types of personal documents." (Letter of Explanation at 1). Counsel further explained that "[s]ome of the documents were duplicates, some were forgeries, some documents originated with a mortgage company, in which the seller had copies and different than what the mortgage company was holding, and there was yet another version of the documents that were sometimes held by the secondary lender." (Letter of Explanation at 1). Moreover, there were "at least 10 primary lenders and close to 10 secondary institutions which purchased the loans from the primary lenders." (Letter of Explanation). The sheer volume of documents which Counsel had to review in order to effectively represent Defendant rendered this case more complex than the average case.

Third, the representation of Defendant required Counsel to attend a number of hearings and status conferences in this case. Plaintiff made appearances at an initial appearance proceeding (7/28/09) and two hearings on Defendant's motion to sever (1/19/10

and (2/12/10). Counsel argued at these hearings in addition to appearing at a calendar call (2/10/10) and six status conferences (9/4/09, 10/7/09, 11/4/09, 12/16/09, 1/13/10 and 2/10/10).

Fourth, this case was more complex than the average case because Defendant pled not guilty and proceeded to trial. "The trial took approximately 7 weeks and [involved] over 30 witnesses", taking place from February 16, 2010 through April 7, 2010 (Letter of Explanation). The case ended in a mistrial. **[See DE # 666]**.

It is clear from the record that the legal and factual issues in this case were unusual. Consequently, I conclude that this matter required the expenditure of more time, skill and effort by Counsel than would normally be required in the average case. As I have concluded that the representation provided by Counsel was complex, I must review the voucher to determine the appropriate amount for which Counsel should be compensated in excess of the $9,700.00 statutory maximum.

### *Voucher Amount - Administrator's Review*

The Court's CJA administrator first reviewed the voucher for compliance with the Guidelines and mathematical accuracy prior to my review. Counsel requested compensation for 195.3 in-court hours totaling $24,313.50. The CJA administrator made no changes to either the number of in-court hours claimed by Counsel or the total amount sought.

The CJA administrator also reviewed the $62,433.50 Counsel billed for out-of-court hours. Counsel sought compensation for 114.4 hours for "Interviews and conferences" and 212.6 hours for "Obtaining and reviewing records". Counsel also sought compensation for 22.4 hours for "Legal research and brief writing" and 173.3 hours for "Investigative and Other

work." The CJA administrator made no changes to the out-of-court hours listed in the voucher.

Counsel further sought $190.50 in "Travel Expenses" and $940.10 in "Other Expenses." The CJA administrator made no changes to the amount of "Other Expenses" listed by Counsel in the voucher. The CJA administrator did reduce the amount of expenses sought by Counsel in the category "Travel Expenses" to $185.00, however. After making this one adjustment, the CJA administrator concluded that the total amount sought by Counsel decreased to $87,872.10 from $87,877.60.

### In-Court Hours[1]

Counsel sought a total of $24,313.50 for 195.3 in-court hours. The CJA administrator made no correction to this calculation. I approve this amount as reasonable.

### Out-of-Court Hours

In the voucher, Counsel sought $62,433.50 for 522.7 out-of-court hours. The CJA administrator reviewed the voucher and made no changes to either the amount sought or the number of hours listed by Counsel.

Although the vast majority of Counsel's time entries are appropriate, Counsel included some entries that were not sufficiently specific for the undersigned to determine the purpose of the entries. Following submission of his voucher, I questioned Counsel about these entries. Counsel submitted a revised Addendum to CJA 20 on August 16, 2010 wherein he clarified most of the questionable entries.

---

[1] The undersigned defers to the Court Clerk to verify all in-court time and expense allowances.

A few troublesome entries remain, however, and I recommend that these entries be eliminated:

| | | |
|---|---|---|
| 11/23/09 | Correspondence with Government, Phone calls with Pretrial Services | 0.3 hours |
| 3/3/10 | Phone calls with Roy Kahn who represented the Davides - who were witnesses | 0.5 hours |

These entries for telephone conferences are not sufficiently detailed to justify compensation. The "Supplemental Instructions for Completing CJA20 Vouchers" form (the "Supplemental Instructions") provides that "[t]elephone conferences in excess of one tenth (0.1) hour require notation of reason for duration, and parties to conversation identified." Although Counsel identified the parties to each conference listed above, Counsel failed to explain the reason for the duration of the conferences in excess of 0.10 hours.

Similarly, Counsel listed two entries for conferences that are still insufficiently detailed to warrant compensation:

| | | |
|---|---|---|
| 3/5/10 | Correspondence with co-defendant's | 0.2 hours |
| 3/8/10 | Correspondence with witness Davide's attorney Roy Kahn | 0.2 hours |

In the first entry, I am unclear as to the nature of the correspondence and with whom Counsel corresponded. In the second entry listed above, although Counsel identifies the participants of the conference, he fails to describe the nature or purpose of the correspondence. Accordingly, based on the information submitted by Counsel, I cannot determine whether the time expended is compensable under the CJA. Accordingly, I

recommend that Counsel should not be compensated for the 0.8 hours in conferences or the 0.4 hours of correspondence detailed above. This mandates a reduction of 1.2 hours for a total of $145.50.

I find, however, that the remaining out-of-court hours listed in the voucher application are appropriate. Factoring in my deductions, I recommend that Counsel should be paid $62,288.00 for his out-of-court hours.

In making this recommendation, I have been mindful that when considering awards to Counsel under the CJA, courts have long recognized that there is an inherent tension between the policies underlying the CJA: "[o]n the one hand, representing indigent defendants is a form of public service; thus, the [CJA] was never intended to provide full compensation for an attorney's services or to provide fees equal to those charged in private practice. . . . On the other hand, the Act was also intended to provide indigent defendants with meaningful representation by competent counsel". *United States v. Mukhtaar,* 2008 WL 2151798, at * 2 (S.D. N.Y. May 21, 2008) (citations omitted). As other courts have explained, the CJA "was intended to partially alleviate the financial burden associated with provision of these services which had been traditionally provided pro bono. The spirit of the statute is lost once the CJA representation of indigent defendants loses its essentially pro bono nature." *United States v. Diaz,* 802 F.Supp. 304, 307 (C.D. Cal. 1992) (quoting *United States v. Carnevale,* 624 F.Supp. 381, 383 (D. R.I. 1985)). In considering these principles with respect to the instant case, I conclude that an award of $62,288.00 for out-of-court hours, is fair, although admittedly not full compensation for Counsel's services.

### Expenses

Counsel sought $190.50 in "Travel Expenses." The CJA administrator decreased the amount of "Travel Expenses" to $185.00. I approve the CJA administrator's correction and approve the amount of $185.00.

Counsel also sought $940.10 in "Other Expenses." The CJA administrator did not change the amount sought. I hereby approve this amount.

### CONCLUSION

I commend Counsel for his professionalism and willingness to take this appointment; the undersigned is appreciative of his efforts. Notwithstanding this appreciation, as I have often quoted, when appropriate and in the spirit of the CJA: "What is commendable, however, is not necessarily compensable." *U.S. v. Smith,* 76 F.Supp.2d 767, 769 (S.D. Texas 1999). It is with this sentiment in mind that I recommend that some of the time incurred by Counsel be considered non-reimbursable.

To be clear, I am not making these recommendations for a lack of appreciation, rather, it is because the courts have the inherent obligation to ensure that claims for taxpayer provided monies are properly spent. Accordingly, I am constricted by the rules established in the Guidelines and in the Supplemental Instructions in awarding Counsel full compensation for all time incurred in this matter.

As I explained above, however, because the representation in this case was complex, I recommend that Counsel be reimbursed for an amount in excess of the statutory maximum of $9,700.00 in this case. Based upon my review of the time sheets, the May 17, 2010 Letter of Explanation, the docket and filings in this case, I RECOMMEND that Counsel be

paid $87,726.60 as fair and final compensation for his work in this case.

In accordance with 28 U.S.C. §636(b)(1), the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file any written objections with the Honorable Donald L. Graham, United States District Judge.

Signed this 26 day of August, 2010.

PETER R. PALERMO
SR. UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

    Scott W. Sakin, Esq.
    Lucy Lara, CJA administrator